U.S. Bankruptcy Court
District of Idaho
Filed:  October 27, 2004
At: 9:00 a.m.
By: Sylvia Wirth

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

In Re:

TIMOTHY DANIELS,

**Debtor.**

**Bankruptcy Case
No. 04-41306**

## MEMORANDUM OF DECISION

**Appearances:**

Stephen A. Meikle, Idaho Falls, Idaho, Attorney for Debtor.

Craig W. Parrish, Pocatello, Idaho, Attorney for Creditor Bannock
Collections, Inc.

R. Sam Hopkins, Pocatello, Idaho, Chapter 7 Trustee.

MEMORANDUM OF DECISION - 1

AO 72A
(Rev. 8/82)

## Background

There was a time in America when debtors were jailed for not paying their debts. In reviewing the facts of this case, it appears perhaps that time has not passed. In this case, a state court judge issued a warrant for the arrest of Timothy Daniels ("Debtor") at the request of Bannock Collections, Inc. ("Creditor") after Creditor was unable to collect a judgment against him for $367.08. Debtor filed for relief under Chapter 7 of the Bankruptcy Code. After the filing, while the arrest warrant remained outstanding, Creditor steadfastly refused Debtor's requests that Creditor act to have the warrant withdrawn. Potentially, even today, Debtor may be subject to arrest.

Debtor contends Creditor's refusal to act to quash the warrant amounts to a violation of the automatic stay of 11 U.S.C. § 362(a). When he could get no help from Creditor, Debtor filed a motion asking this Court to award him damages against Creditor and its lawyer Craig Parrish (hereafter "Counsel"). Docket No. 5. Creditor opposed the motion. Docket No. 6. On August 12, 2004, the Court conducted an evidentiary hearing concerning Debtor's motion and took the issues under advisement. Docket No. 11.

MEMORANDUM OF DECISION - 2

Having reviewed the evidence and testimony submitted at the hearing, along with the parties' post-hearing briefs, Docket Nos. 12, 13, the Court concludes that Creditor and its Counsel, with knowledge of Debtor's pending bankruptcy case, both willfully, even recklessly, violated the automatic stay. As a result, Debtor is entitled to damages. What follows constitutes the Court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052; 9014.

## Facts[1]

Creditor obtained a small claims default judgment against Debtor for $367.08 in state court. When Creditor could not collect the judgment, on February 2, 2004, acting on Creditor's motion, the state court issued an order directing Debtor to produce copies of his 2003 W-2 forms and his federal income tax return for Creditor within ten days. Order, Ex. A. On February 11, 2003, Debtor filed copies of his 2003 W-2 forms with the state court clerk. Ex. B. While Debtor did not give copies of his tax returns to Creditor or file them with the state court, based upon Debtor's testimony at the August 12, 2004 hearing, in response to

---

[1] Those findings that refer to or are based upon the testimony given at the evidentiary hearing reflect the Court's evaluation of the witnesses' credibility and its determination of the proper weight to be attributed to such testimony.

MEMORANDUM OF DECISION - 3

questions from Creditor's counsel, it was apparent that Debtor believed, albeit incorrectly, he had fully complied with the state court's order.

Because Creditor did not receive copies of Debtor's 2003 federal income tax returns, on May 3, 2004, Creditor's employee and paralegal, Traci Bender, applied *ex parte* to the state court for a warrant for Debtor's arrest based upon his failure to fully comply with the state court's order. Ex. 1. Ms. Bender drafted and submitted a proposed arrest warrant for the judge's signature. Ex. 2. Creditor asked the state court to set bail for Debtor's release when he was arrested in the same amount as Creditor's judgment, and that the bail be payable only in cash. Ex. 1.[2]

The state court, for reasons that are not apparent from the record, and without any further notice to Debtor or opportunity for a hearing, accommodated Creditor's request in all respects, and issued a warrant for his arrest on May 4, 2004. As Creditor had asked, the warrant required Debtor to post bail, in cash, in the same amount as Creditor's judgment. Ex. 2. Ms. Bender received a

---

[2] Notably, Creditor did not simply ask for Debtor's income tax return in lieu of his arrest, nor did Ms. Bender advise the state court judge of Debtor's attempt to comply with the order by filing copies of his W-2 forms with the clerk. Ex. 1.

MEMORANDUM OF DECISION - 4

copy of the warrant from the state court after it was issued, sometime before the
end of May.

Luckily for all concerned, Debtor, who was unaware of the
outstanding warrant, was not arrested.  Instead, he consulted an attorney and filed
a petition for relief under Chapter 7 of the Bankruptcy Code on June 17, 2004.
Debtor listed Creditor in his schedules and included Creditor's correct mailing
address on the mailing matrix he filed with this Court.  Docket No. 1.  The
Bankruptcy Noticing Center sent notice of Debtor's bankruptcy filing to Creditor
by mail.[3]  In addition to receipt of the written notice of Debtor's bankruptcy filing,
Ms. Bender also recalls receiving a telephone call from Debtor's attorney at about
the same time informing her of Debtor's bankruptcy.

Because of the outstanding warrant, and knowing that Debtor had
filed a bankruptcy petition, Ms. Bender sought the advice of legal counsel about
Debtor's situation.  Ex. C.  She had a conversation with Counsel, who regularly
represents Creditor in its collection actions, on June 30, 2004.  Ex. C.  At that

---

[3]  The certificate of mailing filed with this Court by the Bankruptcy Noticing
Center reflects that notice was mailed to the parties listed on the mailing matrix on June
20, 2004.  Creditor was sent copies of the notice at two addresses, one of which was a
post office box and the other a street address.  Ms. Bender apparently received the notice
on June 30, 2004.  Creditor's Brief at 4, Docket No. 12.

MEMORANDUM OF DECISION - 5

time, in response to Ms. Bender's inquiries, Counsel advised her that Creditor was not obliged to take any steps to withdraw the outstanding warrant. Instead, he told her that it was Debtor's responsibility to approach the state court to quash the warrant. Ex. C; Brief at 4, Docket No. 12. Ms. Bender took her lawyer's advice; she did nothing, and neither did Counsel.

Over a month after the bankruptcy filing, on July 22, 2004, acting on the outstanding warrant, the police appeared at the home of Debtor's parents to arrest him. He was not there. Debtor's parents informed him that the police were looking for him. After making several phone calls to the state court, and then to Creditor, Debtor learned that the police were after him in connection with Creditor's collection action. Debtor contacted his bankruptcy attorney. Since then, Debtor has worried about the possibility he could be arrested at any time.

Over the course of the next two days, staff members at Debtor's attorney's office called Ms. Bender and asked her for help in getting the arrest warrant withdrawn. Ms. Bender advised them that Counsel had advised her not to withdraw the warrant, and that she intended to follow that recommendation. Ms. Bender instructed Debtor's attorney's staff to call Counsel for any further help regarding the situation. They did. Counsel also declined the requests that he act

MEMORANDUM OF DECISION - 6

to get the warrant quashed.  On July 30, 2004, Debtor filed the instant motion.
Docket No. 5.

At the August 12 hearing, Ms. Bender explained that it is her
company's practice and custom to seek financial information from the judgment
debtors from whom Creditor is attempting to collect in state court.  If that
information is not forthcoming, Creditor routinely asks the state courts to order
that the debtors be arrested under a warrant with a cash bond in the exact amount
of the judgment.  In response to questions by the Court, Counsel conceded at the
hearing that the warrant procedure is intended as a tool to extract payment from
the judgment debtors.  Once the bond is posted, Counsel explained that Creditor
then applies to the state court for release of the cash to Creditor in satisfaction of
the debt.  If the judgment debtor happens to file for bankruptcy relief during this
process, Counsel has advised his client that it should ask the state court to release
the bail money, but only to the bankruptcy trustee.

MEMORANDUM OF DECISION - 7

## Arguments of the Parties

To be clear, the propriety of Creditor's actions in obtaining the issuance of an *ex parte* warrant for Debtor's arrest for failure to turn over financial information to Creditor is not a matter of concern for this Court. Because those proceedings took place and the warrant was issued before Debtor filed his bankruptcy petition, the automatic stay under § 362(a) was not implicated. It is only Creditor's and Counsel's conduct, and the events that took place after the bankruptcy case was commenced, that Debtor can call into question in this context.

Creditor's position in this case is simple enough. Although the arrest warrant presumably remained outstanding at the time of the evidentiary hearing and despite Debtor's motion, Creditor contends it effectively ceased any collection activities against him upon the bankruptcy filing. Creditor argues it had no duty to act to withdraw the warrant at that time. Instead, Creditor insists that because the warrant was issued by the state court based upon Debtor's failure to comply with its order to provide the tax documents, the warrant was designed to "uphold the dignity of the court." Creditor asserts that if grounds existed to quash the warrant, Debtor should have gone to the state court, not to Creditor, for help.

MEMORANDUM OF DECISION - 8

Debtor argues that Creditor's conduct in securing the issuance of an arrest warrant with cash bail set in the amount of the judgment was but a poorly disguised collection tool. Because the warrant procedure was intended by Creditor to result in the collection of the judgment, Debtor contends that Creditor and Counsel, by refusing to cooperate in getting the warrant withdrawn after Debtor's bankruptcy filing, violated the automatic stay. Debtor seeks money damages from both Creditor and its Counsel for $135 in lost wages, $2,850 in attorney fees, and $4,300 for his emotional distress. To punish Creditor, Debtor asks for $9,000 in punitive damages. Docket Nos. 5, 10, 13, 14.

### Disposition of the Issues

Simply stated, Debtor's position has merit. On these facts, the Court concludes that Creditor and Counsel willfully violated the automatic stay, and as prescribed by the Bankruptcy Code, both are liable to Debtor for damages. Here's why.

### A. Creditor's Actions Violated the Automatic Stay.

#### 1.    Creditor's request for issuance of the arrest warrant was a mere collection device.

The legal implications for creditors when a debtor files a bankruptcy petition are weighty, indeed. One immediate impact of a bankruptcy filing is the

MEMORANDUM OF DECISION - 9

effect of the automatic stay on a creditor's rights. "The scope of protections embodied in the automatic stay is quite broad, and serves as one of the most important protections in bankruptcy law." *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1214 (9th Cir. 2002). Under § 362(a), the filing of a bankruptcy petition operates, as a matter of law (or in other words, *automatically*), as a stay that prohibits, among other things, "the commencement or continuation, including the issuance *or employment of process*, of a judicial . . . action or proceeding against the debtor that was . . . commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the [bankruptcy] case . . . ." 11 U.S.C. § 362(a)(1) (emphasis added). The stay also forbids "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the [bankruptcy case] . . . ." 11 U.S.C. § 362(a)(6). Beyond doubt, the plain language of the statute absolutely prohibits the continuation of a creditor's pending state court judicial action against a debtor in bankruptcy. *Eskanos & Adler, P.C.*, 309 F.3d at 1214. And without question in this case, when Debtor filed for bankruptcy relief, the automatic stay precluded any further proceedings in Creditor's state court collection action against Debtor.

MEMORANDUM OF DECISION - 10

Of course, Creditor contends it took no action in state court against Debtor after he filed for bankruptcy. Creditor's spin of the facts suggests it was the state court, not Creditor, that issued the arrest warrant, and that it did so not to assist Creditor in its effort to get paid, but to uphold the integrity of the court and as a sanction because Debtor failed to produce financial documents as previously ordered. In Creditor's view, even after the bankruptcy filing, the state court could properly punish Debtor's contempt for its orders, because in so doing, it was protecting the public interest, not furthering Creditor's pecuniary goals. And once issued, only the state court, not Creditor, could quash the warrant, if it were so inclined. Viewed in that manner, Creditor rationalizes it was not responsible to act to get the warrant quashed.

When Debtor filed for bankruptcy relief, *any* further proceedings in the state court action were unconditionally stayed by operation of federal law. That would obviously include any efforts to enforce the state court's arrest warrant. The issue raised in this case is whether, in failing to take steps to stop those proceedings, Creditor or Counsel violated the automatic stay. Without deciding whether a state court may ever punish a debtor for civil contempt for violating its orders in a collection action after the debtor files a bankruptcy

MEMORANDUM OF DECISION - 11

petition, the Court declines to accept Creditor's strained view of the issues. The simple facts suggest otherwise.

Here, Creditor initiated the process that culminated in the state court issuing a warrant for Debtor's arrest. Creditor filed the state court collection action against Debtor and secured a money judgment against him. Creditor followed up with post-judgment collection proceedings. Specifically, when Creditor's judgment against Debtor went unpaid, Creditor sought information about Debtor's financial affairs. Understandably, copies of Debtor's tax documents would have been helpful to Creditor to garnish Debtor's wages or seize his assets. But when Debtor failed to produce some of the requested information, Creditor asked the state court to put Debtor in jail. It was Creditor that sought entry of a warrant for Debtor's arrest, even to the point of drafting the arrest warrant. In other words, this entire scenario was created, produced and directed by Creditor, not the state court.

Creditor's strategy in this case was nothing new nor was it based upon anything distinctive about Debtor's conduct. It was Creditor's routine practice to seek a warrant in such cases, and if a debtor was arrested and bail was posted, to ask the state court to give it the cash in satisfaction of its claim. At that

MEMORANDUM OF DECISION - 12

point, it was clear Creditor no longer wanted just information; it wanted money.

To avoid incarceration, Debtor was required to post bail, in cash, in the exact

amount of the judgment. The question for Debtor became "should I pay the

judgment or should I go to jail?" To this Court, it is clear that Creditor's efforts to

get Debtor put behind bars were "calculated to enforce a money judgment, pursue

a 'collection motive,' [and] to harass" Debtor. *In re Lincoln*, 264 B.R. 370, 374

(Bankr. E.D. Pa. 2001). Requiring Debtor to either pay up or lose his freedom is a

choice the Bankruptcy Code was designed to eliminate.

Creditor's use of the state court contempt proceedings was in

furtherance of its collection action. And even though the arrest warrant was issued

prebankruptcy, maintenance of that collection action in the form of the potential

enforcement of the arrest warrant was prohibited by operation of the automatic

stay once the bankruptcy case was commenced. *Eskanos & Adler, P.C.*, 309 F.3d

at 1215 ("The maintenance of an active collection action alone adequately satisfies

the statutory prohibition against 'continuation' of judicial actions."). *See also*

*Guariglia v. Cmty. Nat'l Bank & Trust Co. (In re Guariglia)*, 382 F. Supp. 758,

761 (E.D.N.Y. 1974) (finding that the creditor's post-judgment contempt action

MEMORANDUM OF DECISION - 13

against the debtor for failing to answer interrogatories was, in reality, a collection

method when the fine imposed was in the exact amount of the judgment).[4]

## 2. When Debtor filed for bankruptcy relief, Creditor had an affirmative duty to act to quash the warrant.

---

[4] The Court's conclusion in this regard blazes no new legal trail. The reported opinions of other courts that have considered the question presented here conclude that the use of an arrest warrant, or the continuation of post-judgment collection methods under similar circumstances, is prohibited by § 362(a)(1) and (6). *See, e.g., Guariglia,* 382 F. Supp. at 760-61 (concluding that a contempt order and fine imposed in the amount of the creditor's judgment constituted a prohibited collection action, and that labeling the order as one for contempt did not change its character as a collection tool); *Goodman v. Albany Realty Co. (In re Goodman),* 277 B.R. 839, 842-43 (Bankr. M.D. Ga. 2001) (holding that an arrest warrant issued for the debtor's failure to answer interrogatories propounded after the creditor had failed to collect its judgment was issued to aid in collection of a judgment and was subject to the automatic stay); *In re Lincoln,* 264 B.R. 370, 374-75 (Bankr. E.D. Pa. 2001) (denying stay relief when the underlying purpose of continuing creditor's contempt action was calculated to enforce its money judgment); *Siskin v. Complete Aircraft Servs., Inc. (In re Siskin),* 231 B.R. 514, 519-20 (Bankr. E.D.N.Y. 1999) (holding that a court order of commitment, issued to compel the debtor to turn over documents in aid of the creditor's post-judgment collection efforts, is within the automatic stay); *In re Barboza,* 211 B.R. 450, 452-53 (Bankr. D.R.I. 1997) (holding that an arrest warrant and order to pay bail in the exact amount of the restitution awarded to the creditor, which was subsequently disbursed to the creditor, constituted a postpetition collection action prohibited by the automatic stay); *Smith v. Mitchell Constr. Co. (In re Smith),* 180 B.R. 311, 319 (Bankr. N.D. Ga. 1995) (holding that the automatic stay was applicable to the contempt order entered to force the debtor to respond to post-judgment interrogatories by the creditor in an effort to collect its judgment against the debtor); *Atkins v. Martinez (In re Atkins),* 176 B.R. 998, 1007-08 (Bankr. D. Minn. 1994) (holding that civil contempt proceedings initiated after the debtor failed to satisfy the creditor's judgment were stayed when the proceedings were designed to aid creditor in its collection efforts). Creditor and its Counsel do not discuss in their brief, nor explain why they apparently discounted, these many published decisions.

MEMORANDUM OF DECISION - 14

Having concluded that the pending state court proceedings, including the enforcement of the warrant issued at Creditor's request, were subject to the automatic stay, the Court next addresses Creditor's argument that, upon learning of Debtor's bankruptcy, it had no duty to act affirmatively to withdraw the warrant. Given the purpose of the automatic stay, Creditor's argument must fail.

The automatic stay was designed to give debtors in bankruptcy relief from creditor collection actions. As interpreted by the Ninth Circuit Court of Appeals, "§ 362(a)(1) imposes an *affirmative duty* to *discontinue* post-petition collection actions." *Eskanos & Adler, P.C.*, 309 F.3d at 1215 (emphasis added). Implicit in this command is a creditor's responsibility to act to stay further proceedings in process at the time a bankruptcy case is commenced, or in the words of the court, to "automatically dismiss or stay such proceeding or risk possible sanctions for willful violations" of the automatic stay. *Id.* at 1214.

Here, after Debtor filed for bankruptcy, Debtor asked Creditor to act to protect him from arrest. Creditor refused. Instead, Creditor sought to shift the duty to quash the warrant to Debtor, the state court, or to the police by asserting it was the "court's warrant," and by telling Debtor it had no responsibility to

MEMORANDUM OF DECISION - 15

withdraw the warrant. The past decisions of this Court clearly criticize this attitude.

In *In re Johnson*, 262 B.R. 831, 847 (Bankr. D. Idaho 2001), the sheriff seized literally all of the debtor's personal property at the request of a creditor before the debtor filed for bankruptcy. After bankruptcy, the creditor insisted that it was the debtor's burden to secure the release of the property to debtor from the sheriff. When the debtor challenged the creditor's position in this Court, it held that the creditor, not the sheriff, bore the duty to secure a stay in the state court proceedings and to restore the debtor's possession of the seized property. *Johnson*, 262 B.R. at 847. This Court explained:

> [C]reditors and their counsel are not allowed to sit by and watch the litigation they have commenced proceed by shifting responsibility to local authorities charged with collecting judgments obtained through their efforts . . . . 'The provisions of the automatic stay place the responsibility to discontinue any pending collection proceedings squarely on the shoulders of the creditor who initiated the action . . . .'

*Id.* (quoting *In re Johnson*, 253 B.R. 857, 861 (Bankr. S.D. Ohio 2000)). *See also In re Jacobson*, 03.2 I.B.C.R. 119, 120 (Bankr. D. Idaho 2003) (finding that once the creditor learned of the bankruptcy filing, its nine day delay in notifying the sheriff to release the debtor's property violated the automatic stay).

MEMORANDUM OF DECISION - 16

The cases instruct that Creditor had an affirmative duty to act to suspend the collection action. In this case, Creditor took no affirmative action to withdraw the warrant after it learned of Debtor's bankruptcy filing. Because of Creditor's inaction, law enforcement officers appeared at Debtor's parents' home in an attempt to arrest Debtor on July 22. Despite Debtor's requests for help, Creditor persisted in its view that it need not act to prevent Debtor's arrest. Under these circumstances, Creditor's conduct violated the automatic stay. *See Johnson*, 262 B.R. at 848.

Counsel also bears personal responsibility for stay violations under the facts in this case. Based upon the evidence, it was clear to the Court that but for Counsel's advice, Creditor may have pursued an alternative path. It also appears that Creditor authorized Counsel to finally determine whether it should accede to Debtor's requests. In this case, Ms. Bender not only instructed Debtor and his attorney's staff to consult with Counsel about the case, but also made it abundantly clear that the attorney, not her, should ultimately "make the call" concerning whether Creditor should accommodate Debtor's needs.

In particular, after the attempted arrest, staff at Debtor's counsel's office called Counsel and specifically asked him to act to withdraw the warrant or

MEMORANDUM OF DECISION - 17

risk violation of the automatic stay.  In responding, Counsel was engaged in more than merely rendering advice to Creditor.  Counsel appreciated his role as the "decision-maker" when he refused to cooperate by promoting the notion that he and his client had no duty to act.  Under these facts, Counsel's conduct is actionable.  *See Tsafaroff v. Taylor (In re Taylor)*, 884 F.2d 478, 483 n.6 (9th Cir. 1989) (noting that, upon appropriate facts, an attorney may be found to have willfully violated the stay, thereby subjecting Counsel to damages under § 362(h)); *Fidelity Mortgage Investors v. Camelia Builders, Inc. (In re Fidelity Mortgage Investors)*, 550 F.2d 47, 57-58 (2d Cir. 1976) (holding both creditor and its attorney liable for damages, fees and costs for instituting a state court action to foreclose a materialman's lien despite the fact that the debtor had filed a Chapter 11 petition).

### B. The Failure to Act Was Willful.

To recover damages under § 362(h), the debtor must show that the creditor's offensive acts were "willful."[5]  In the Ninth Circuit,

---

[5]  Section 362(h) of the Bankruptcy Code provides that:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys fees, and, in appropriate circumstances, may recover punitive damages.

MEMORANDUM OF DECISION - 18

> A 'willful violation' does not require a specific intent
> to violate the automatic stay. Rather, the statute
> provides for damages upon a finding that the *defendant*
> *knew of the automatic stay and that the defendant's*
> *actions which violated the stay were intentional.*

*Taylor*, 884 F.2d at 482 (quoting *Goichman v. Bloom* (*In re Bloom*), 875 F.2d 224,

227 (9th Cir. 1989) (emphasis added)); *see also Eskanos & Adler, P.C.*, 309 F.3d at

1215 ("A willful violation is satisfied if a party knew of the automatic stay, and its

actions in violation of the stay were intentional.") (citing *In re Pinkstaff*, 974 F.2d

113, 115 (9th Cir. 1992)); *Jacobson*, 03.2 I.B.C.R. at 121; *In re Wiersma*, 03.1

I.B.C.R. 42, 44 (Bankr. D. Idaho 2003); *Johnson*, 262 B.R. at 848. It is the intent

to act after receiving notice of the bankruptcy case, not a specific intent to violate

the stay, that is material. *In re Andrus*, 04.3 I.B.C.R. 137, 141 (Bankr. D. Idaho

2004).

### 1. Creditor's actions were willful.

There is little doubt Creditor's violation of the automatic stay was

willful here. Creditor was aware of Debtor's bankruptcy filing, both from its

receipt of written notice from the BNC and via the telephone calls from Debtor's

counsel. Once aware of Debtor's bankruptcy, Creditor sought advice from

MEMORANDUM OF DECISION - 19

Counsel regarding what it should do about the outstanding arrest warrant.
Accepting Counsel's advice, Creditor made the deliberate decision to do nothing.

In the meantime, and in spite of the protection afforded by the
automatic stay, Debtor was at risk of arrest. The police contacted Debtor's
parents, a development that must certainly have been unnerving for them and
Debtor alike. Afterward, Debtor's counsel repeatedly asked Creditor to withdraw
the arrest warrant; Creditor refused and instead directed Debtor's counsel to
contact its attorney for help. Counsel then rebuffed Debtor's pleas. Indeed,
Creditor and Counsel apparently still have not acted to quash the arrest warrant,
even after Debtor has forced the issue by coming to this Court.

Creditor reminds the Court that it relied upon the advice of counsel
in rejecting Debtor's calls. *See* Ex. C. But even a good faith reliance on the
advice of counsel[6] is no defense to a debtor's action to remedy willful violations of
the automatic stay. *Taylor*, 884 F.2d at 483; *Johnson*, 262 B.R. at 848 ("neither a
good faith belief that the creditor had a right to the property nor good faith reliance
on the advice of counsel is relevant") (quoting *Barnett v. Edwards (In re*

---

[6] Under these facts, whether Creditor (a professional collection agency) and its
employee (a "paralegal") acted in good faith in ignoring the impact of the automatic stay
on the advice of their attorney remains an open question.

MEMORANDUM OF DECISION - 20

*Edwards*), 214 B.R. 613, 620 (B.A.P. 9th Cir. 1997)); *Wiersma*, 03.1 I.B.C.R. at 44

("whether the Bank's agent believed he had good reason to act is not relevant to

the Court's determination of whether a § 362(h) violation has occurred."). That a

creditor should question the advice of its attorney may seem counterintuitive to

some. But the reason for this decisional rule is a sound and simple one:

> '[T]he stay is a broad provision which requires a
> creditor to seek a *judicial* determination of its right to
> proceed.' It would contravene a fundamental policy of
> federal bankruptcy law to allow creditors to proceed
> with actions possibly subject to the stay merely upon
> the advice of an *attorney* that they are entitled to
> proceed. Accordingly, because 'good faith reliance on
> the advice of counsel' is not a defense, [Debtor] is
> entitled to an award of actual damages, costs, and
> attorney fees to the extent she was injured by the
> 'willful violation.'

*Taylor*, 884 F.2d at 483 (emphasis added, citations omitted). If Creditor doubts

the advice about the Bankruptcy Code given to it by counsel, it has an option: get

appropriate guidance from the Bankruptcy Court. Doing nothing, under these

facts, was indefensible.

In short, the Court concludes Creditor's conduct constituted a willful

violation of the automatic stay.

**2.    Counsel's conduct was willful.**

MEMORANDUM OF DECISION - 21

Counsel's conduct after the attempted arrest constitutes a willful violation of the automatic stay as well. With knowledge of the pending bankruptcy case, Counsel made a deliberate decision to refuse to cooperate with Debtor's counsel by withdrawing the warrant. By resisting Debtor's requests, Counsel assumed the same risk as did Creditor that his conduct would violate the automatic stay. *See In re Fidelity Mortgage Investors*, 550 F.2d at 58; *In re Forty-Five Fifty-Five, Inc.*, 111 B.R. 920, 922 (Bankr. D. Mont. 1990) (finding both creditor and its counsel committed a willful violation of the automatic stay when counsel, after the bankruptcy filing, requested a state court to issue an injunction prohibiting the debtor from transferring stock).

As noted above, while it seems obvious now, one prudent course for Creditor and Counsel would have been to seek a prompt judicial determination that their proposed course was the correct one. *See Taylor*, 884 F.2d at 483 n.6; *In re Forty-Five Fifty-Five, Inc.*, 111 B.R. at 923 ("If a creditor [or his attorney] is uncertain about the scope of the automatic stay, he takes the risk of being assessed for damages if he fails to obtain clarification from the bankruptcy court."). Instead, Creditor and Counsel elected to require Debtor to obtain a judicial determination of the issues. Consequences attend that decision.

MEMORANDUM OF DECISION - 22

The Court has reviewed the cases cited by Creditor and Counsel that they suggest justify their strategy. None of these decisions, in the Court's view, can be read to offer support under these facts.

For example, Counsel and Creditor cite *US Sprint Communications Co. v. Buscher*, 89 B.R. 154, 156–57 (D. Kan. 1988). There, the debtor-defendant had violated a preliminary injunction issued by the district court forbidding him from distributing illegal telephone service access codes. To prevent this conduct, and also because he failed to appear at a hearing concerning his actions, the court found debtor in contempt and ordered him jailed. However, before he could be incarcerated, the debtor filed for bankruptcy, contending that the contempt proceedings should be stayed under § 362(a). The court held the stay was inapplicable. *Id.* at 156 (citing *Guariglia*, 382 F. Supp. at 761). The court noted that there is an important difference between a contempt proceeding intended as "a circumvented method of collecting a judgment against the debtor," as was the case in *Guariglia* and that was certainly stayed by the bankruptcy filing, and a court's order designed to prevent a debtor from continuing to violate the terms of an injunction against illegal activity, which is not subject to the bankruptcy stay. *Buscher*, 89 B.R. at 156–57.

MEMORANDUM OF DECISION - 23

The facts of *Buscher* are markedly dissimilar to those of this case. There is no comparison to be made between the state court's order in this case that Debtor be arrested and incarcerated unless he posts cash equal to Creditor's judgment, and the one in *Buscher* fashioned by the federal district court to prevent on-going illegal conduct. *See* Creditor's Brief at 5, Docket No. 12. At the risk of stating the obvious, again, Creditor's design in securing the state court's order here was to get paid, not to protect the public from illegal activities. The *Buscher* court used its contempt order to prevent continuing violations of the law.[7]

---

[7] Counsel cited two additional cases, also implicating § 362, which are clearly not applicable to the facts here either. In *SEC v. Bilzerian*, 131 F. Supp. 2d 10, 14–15 (D.D.C. 2001), the court decided that a contempt order issued in a securities fraud case that required the debtor to turn over financial information was excepted from the automatic stay under § 362(b)(4) because it constituted an SEC regulatory action. In *In re Maloney*, 204 B.R. 671, 674–76 (Bankr. E.D.N.Y. 1996), the defendant was incarcerated prior to his bankruptcy filing for failing to obey a court order to pay a property settlement related to his divorce. After he filed a bankruptcy case, he sought to avoid further incarceration arguing he was protected by § 362(a). However, in *Maloney*, the debtor was not given any alternative to incarceration, such as paying the debt, and his incarceration was for a definite time, leading the court to conclude that his continued incarceration for the failure to obey a court order was not merely a collection device prohibited by the automatic stay. *Maloney*, 204 B.R. at 675–76. Moreover, § 362(b)(2) expressly excepts the continuation of actions to collect support from the reach of the automatic stay. Here, neither the government's police powers nor support enforcement exceptions to the automatic stay are applicable, and the order for Debtor's incarceration was for an indefinite period of time, with a "get-out-of-jail" provision if Debtor payed cash bail equal to the amount of Creditor's prepetition claim.

MEMORANDUM OF DECISION - 24

Counsel relies upon two other cases not involving the scope of the automatic stay under § 362, but instead examining the application of the exception to discharge provisions under 11 U.S.C. § 523. Counsel's reliance is misplaced. The court in *Thruway Messenger Serv., Inc. v. Marini (In re Marini)*, 28 B.R. 262, 265–66 (Bankr. E.D.N.Y. 1983), decided whether a fine, imposed by a state court because the defendant-debtor violated a temporary restraining order barring him from interfering with a creditor's business, was excepted from discharge under § 523(a)(7).[8] The *Marini* court held that the fine could not be discharged because it was imposed by the court as punishment for the debtor's violation of the temporary restraining order. *Marini*, 28 B.R. at 266. Similarly, *Rose v. Gedeon (In re Gedeon)*, 31 B.R. 942, 946 (Bankr. D. Colo. 1983), held that monetary contempt fines imposed when the debtor-defendant violated a custody order requiring him to surrender custody of his children to the plaintiff-mother were also nondischargeable under § 523(a)(7).

It is true that, in a Chapter 7 case, entry of a discharge in the debtor's favor terminates the automatic stay against creditor actions to collect

---

[8] Section 523(a)(7) provides that a debt is not dischargeable "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty . . . ."

MEMORANDUM OF DECISION - 25

nondischargeable debts from the debtor.  *See* 11 U.S.C. § 362(c)(2)(C); § 727(b).

But, prior to the entry of a discharge, even creditors holding nondischargeable

debts are prohibited by the automatic stay from resorting to judicial proceedings to

collect.  Thus, even if Creditor's claim against Debtor were for some reason

excepted from discharge in Debtor's bankruptcy case (something which has

certainly not been shown to be the case), the refusal by Creditor and Counsel to

act to quash the outstanding arrest warrant would still constitute a willful violation

of the automatic stay.

### C.  Damages.

#### 1.    Actual damages.

If a stay violation has occurred, an award of actual damages is

mandatory.  11 U.S.C. § 362(h) ("An individual injured . . . shall recover actual

damages . . ."); *Wiersma*, 03.1 I.B.C.R. at 44 (stating that once a court decides a

willful stay violation has occurred, an award of actual damages is mandatory)

(citing *California Employment Dev. Dep't v. Taxel (In re Del Mission Ltd.)*, 98

F.3d 1147, 1152-53 (9th Cir. 1996)).  Actual damages include the costs and

attorneys fees incurred by the debtor to remedy the stay violation.  11 U.S.C.

§ 362(h); *In re Roman*, 283 B.R. 1, 9-10 (B.A.P. 9th Cir. 2002).  However, the

MEMORANDUM OF DECISION - 26

debtor bears the burden of proving any actual damages resulting from a stay violation. *Jacobson*, 03.2 I.B.C.R. at 121 (holding that the debtor must prove the amount of actual damages).

In this case, Debtor seeks damages for his lost wages and attorney fees. The Court concludes Debtor has sufficiently proven his entitlement to recover all of his wages and attorney fees. Debtor testified he lost two days of work because of the pendency of the arrest warrant and to attend the hearing on this motion. His wages for those two days would have been $135. Aff. of Debtor at 2, Docket No. 10; Debtor's Brief at 6, Docket No. 13.[9] Debtor is entitled to recover this amount from Creditor.

Debtor's counsel submitted a detailed affidavit itemizing the services he provided attempting to quash the outstanding warrant for Debtor's arrest and prosecuting this motion. Docket No. 14. The fees amounted to $2,850.00. While given an opportunity to do so, Creditor did not object to Debtor's fee accounting. For the Court to award attorney fees, the fees must be reasonable. *In re*

---

[9] The Court notes that according to Debtor's Schedule I, he earns $1,040 per month, which would translate to $48 per day or $6.00 per hour. Therefore, two days of lost wages amounts to $96.00. Nevertheless, since there may have been changes in Debtor's employment or income since the schedule was filed, the Court will accept Debtor's lost wage calculations in his more recent affidavit.

MEMORANDUM OF DECISION - 27

*Aughenbaugh*, 02.4 I.B.C.R. 157, 163 (Bankr. D. Idaho 2002). The amount of

fees requested in this case is adequately documented and, given the issues and

facts, appears reasonable. Debtor will be awarded his attorney fees as requested.

### 2.    Damages for emotional distress.

Debtor also seeks an award of damages for his "emotional distress."

While the case law is divided nationally, the prevailing case law in this Circuit

holds that, to recover damages for the debtor's emotional distress from a creditor

that intentionally violates the automatic stay, the debtor must show that he suffered

a "significant economic loss caused by the willful violation of the automatic stay .

. . and then establish that his loss caused him emotional injury." *Stinson v. Bi-Rite

Rest. Supply Inc. (In re Stinson)*, 295 B.R. 109, 122 (B.A.P. 9th Cir. 2003).[10]

---

[10]    In May, 2004, the Ninth Circuit published its decision in *Dawson v.
Washington Mutual Bank (In re Dawson)*, 367 F.3d 1174, 1181 (9th Cir. 2004), in which
it held that "'actual damages' under § 362(h) do not include damages for emotional
distress" under any circumstances. However, after hearing on the instant motion, the
court of appeals issued an order withdrawing its opinion in *Dawson. See Dawson*, No.
02-16903, ___ F.3d ___, 2004 WL 2236597 (9th Cir. Oct. 04, 2004). *Stinson,* therefore,
represents the only circuit-level decisional authority concerning this issue. Given the
Court's decision on the merits, it need not decide whether, as a matter of law, Debtor may
recover emotional distress damages in this case. As a result, the Court declines to
withhold entry of its decision here pending filing of an amended decision by the Ninth
Circuit in *Dawson.*

MEMORANDUM OF DECISION - 28

In this case, Debtor has not established that he either suffered a significant economic loss or that he suffered resulting emotional injury. While the conduct of Creditor and its counsel violated the law, as a result, Debtor lost only two days of work, one of which resulted from the need to attend the motion hearing. The bulk of Debtor's economic loss is attributable to the attorney's fees incurred to bring the instant motion, the recovery of which has been allowed above. While Debtor was likely distraught at the prospect that there was an outstanding warrant for his arrest, no competent evidence was offered to prove Debtor's health suffered significantly as a result. Under these facts, absent a significant economic loss and evidence that Debtor suffered substantial emotional injury, the Court declines to award any damages on such account.

### 3.    Punitive damages.

Debtor asks for $9,000 in punitive damages. Because Debtor has proven he suffered actual damages, punitive damages may be awarded. *McHenry v. Key Bank (In re McHenry)*, 179 B.R. 165, 168 (B.A.P. 9th Cir. 1995) (stating that punitive damages may only be awarded if actual damages have been proven). However, punitive damages should only be awarded in "appropriate circumstances." 11 U.S.C. § 362(h). Such circumstances exist when there has

MEMORANDUM OF DECISION - 29

been a "reckless or callous disregard for the law or rights of others." *Stinson*, 295

B.R. at 122 (quoting *Goichman v. Bloom (In re Bloom)*, 875 F.2d 224, 228 (9th

Cir. 1989)). *See also In re McHenry*, 179 B.R. at 168 (stating that punitive

damages are also appropriate if the creditor engaged in "egregious, intentional

misconduct."); *Ramirez v. Fuselier (In re Ramirez)*, 183 B.R. 583, 590 (B.A.P. 9th

Cir. 1995) (stating that punitive damages will be awarded when a creditor's

conduct is "malicious, wanton or oppressive."). When setting the amount of

punitive damages, the Court may take many factors into account, including the

gravity of the offense and its deterrent effect upon Creditor and others. *Wiersma*,

03.1 I.B.C.R. at 44 (citing *Henry v. Assocs. Home Equity Servs., Inc. (In re*

*Henry)*, 266 B.R. 457, 482 (Bankr. C.D. Cal. 2001)).

   While it disappoints the Court to do so, it concludes an award of

punitive damages is appropriate in this case.[11] Not only does the evidence show

that Creditor and Counsel disregarded the Bankruptcy Code, both exhibited a lack

of any concern for Debtor's predicament and rights. In steadfastly adhering to

---

  [11] Although the Court declined to award damages for emotional distress, an award
of punitive damages is not inconsistent with that decision because the purpose of the two
damage awards are different. Emotional distress damages are awarded to redress a
personal injury to the debtor, while punitive damages are designed to punish the
wrongdoer and to deter others.

MEMORANDUM OF DECISION - 30

their offensive course, Debtor was exposed to the continuing risk of arrest and forced to take legal action to protect his rights, something that obviously could and should have been avoided with the parties' cooperation. And the legal position that Creditor and Counsel adopted is contrary to the teachings of the case law of this Court, this Circuit, and most of the decisions of bankruptcy courts to have addressed the issue when considering similar facts.

Because of Creditor's and Counsel's refusal to act, Debtor has suffered the threat of arrest, even, potentially, to this date. Fortunately for all concerned, Debtor has thus far avoided incarceration, but Creditor and Counsel should not benefit from Debtor's good luck in this regard. Faced with Debtor's repeated requests to withdraw the warrant, Creditor and Counsel had a prompt and effective alternative course available: They could have sought a declaration that the automatic stay did not prevent Debtor's arrest, or sought relief from the stay in order to pursue the contempt action. Instead, Creditor and Counsel elected to force Debtor to pursue a motion in this Court to prevent the enforcement of the warrant. Placing the burden on Debtor to prove he is entitled to the protection of the automatic stay is not only heavy-handed and oppressive given Debtor's circumstances, it "suggests the same sort of 'conscious decision to place both the

MEMORANDUM OF DECISION - 31

financial burden and the litigation burden on the Debtor[]'" that was sanctioned in *Aughenbaugh. In re Andrus*, 04.3 I.B.C.R. at 145 (quoting *Aughenbaugh*, 02.4 I.B.C.R. at 164).

The Court can not ignore the status of the parties in this case. Debtor is a lay person with no particular legal training who is, by his public declaration, without resources to pay his debts. Debtor erroneously believed he had complied with the state court's order to turn over his tax information to Creditor. In contrast, Creditor is a professional collection agency, presumably experienced, if not keenly cognizant, of the import of a bankruptcy filing to its collection activities. Counsel, who apparently is Creditor's regular attorney, is similarly presumed to know the limits of the bankruptcy law.

Creditor and Counsel should have both known better. In light of the automatic stay, each should have been motivated to take the cautious route and sought discontinuance of the collection proceedings, which in this case meant withdrawing the warrant. In the alternative, they could have asked this Court for guidance concerning the status of the arrest warrant. Instead, Creditor and Counsel both insisted that Debtor expend his limited resources to quash the warrant. That Debtor filed a motion with this Court, instead of with the state

MEMORANDUM OF DECISION - 32

court, is the risk Creditor and Counsel assumed by their conduct. The Court can only conclude that, in spite of the bankruptcy filing, Creditor and Counsel had calculated that, in order to avoid going to jail, Debtor would pay Creditor's judgment. This sort of maneuver must be sanctioned and discouraged.

In order to punish Creditor and Counsel, and to deter others from engaging in similar conduct, the Court orders, in addition to actual damages, that Creditor and Counsel, jointly and severally, pay Debtor punitive damages equal to ten times Debtor's lost wages, or $1,350.

### Conclusion

The Court was distraught to learn that, even today, a creditor can persuade a state court to incarcerate a debtor to compel payment of a debt. When the debtor seeks shelter under the Bankruptcy Code, such a tactic is prohibited.

The facts show that Creditor initiated the contempt proceedings in state court not to secure the financial information Debtor was ordered to provide, but to coerce him into paying Creditor's judgment. Upon learning that Debtor had filed a bankruptcy petition, Creditor should have acted to quash the outstanding warrant. By refusing Debtor's requests to do what the Bankruptcy Code required, Creditor willfully violated the automatic stay.

MEMORANDUM OF DECISION - 33

Furthermore, it is clear that Creditor abdicated its discretion and would not have taken this offensive course had it not been for the questionable advice of its attorney. Though the published case law counseled against such a course, Counsel elected to press his client's position instead of seeking a judicial determination from this Court that his approach was defensible. In doing so, Counsel appreciated that his decision would not be countermanded by his client.

Debtor is entitled to actual damages of $135 for lost wages and $2,850 for attorney fees. The Court declines to award Debtor any damages for emotional distress. "Appropriate circumstances" also exist justifying the imposition of punitive damages of $1,350. The Court further concludes that because both Creditor and Counsel played an active role in forcing Debtor to bring this action instead of doing what the Code required, the obligation to pay Debtor's damages should therefore be the joint and several obligation of both Creditor and Counsel. *See Andrus*, 04.3 I.B.C.R. at 144 (imposing joint and several liability on all of the individuals and entities that violated the automatic stay).

Finally, lest there be any mistake about the Court's reaction to the facts of this case, Creditor and Counsel would be well-advised to promptly take whatever actions are required to ensure that the state court arrest warrant against

MEMORANDUM OF DECISION - 34

AO 72A
(Rev. 8/82)

Debtor will not be enforced. Under these circumstances, further violations of the

automatic stay will not be appreciated by Debtor nor countenanced by the Court.

Debtor's motion will be granted by entry of a separate order

consistent with this Decision.

DATED This 27th day of October, 2004.


JIM D. PAPPAS
U.S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 35

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I served by the method indicated below, a true copy of the document to which this certificate is attached, to the following named person(s) at the following address(es), on the date shown below:

Office of the U.S. Trustee
jeff.g.howe@usdoj.gov
gary.mcclendon@usdoj.gov

R. Sam Hopkins
sam_hopkins@if.rmci.net

**Via Email**

Stephen A. Meikle, Esq.
P. O. Box 51137
Idaho Falls, Idaho 83405

Craig W. Parrish
P. O. Box 4321
Pocatello, Idaho 83205

**Via U.S. Mail**

Note re E-mail service: A ".pdf" version of the above decision/order was electronically transmitted to the parties indicated above. Email service is provided as a courtesy only upon request of a party. To review an electronic image of the original of this document, or to subscribe for email service of future decisions/orders from the Bankruptcy Judges, please access the Court's Internet web site, www.id.uscourts.gov.

CASE NO.: 04-41306

DATED: 10/27/04

CAMERON S. BURKE, CLERK
U.S. BANKRUPTCY COURT
By Sylvia Wirth, Deputy Clerk

MEMORANDUM OF DECISION - 36